UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DEVIN MORGAN, | : | Case No. 1:20-cv-709 |
| Plaintiff, | : | |
| vs. | : | Judge Timothy S. Black |
| UNITED STATES DEPARTMENT OF EDUCATION, | : | |
| Defendant. | : | |

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

This civil case is before the Court on a motion to dismiss (Doc. 15) filed by Defendant United States Department of Education ("the Department"), and the parties' responsive memoranda (Docs. 17, 18). The motion seeks to dismiss the remaining counts of Plaintiff Devin Morgan's ("Plaintiff's") complaint (Doc. 1) on grounds that the Court lack subject matter jurisdiction or, in the alternative, that the complaint fails to state a claim on which relief can be granted.

### I. FACTS AS ALLEGED BY PLAINTIFF

Plaintiff is federal student loan borrower who successfully repaid his loans. On February 6, 2020, however, Plaintiff noticed that his Equifax credit report still showed the Department of Education was reporting a monthly payment of $226.00. Plaintiff refers to this as the "Errant Tradeline." He wrote a letter to Equifax disputing the Errant Tradeline on April 16, 2020. Equifax, in turn, forwarded it to the Department. By June 1, 2020, the Errant Tradeline had not been corrected and still appeared on his credit

report. Plaintiff alleges damages based on the emotional toll of this error and the effect the error had on his credit worthiness. He brings claims for (I) negligent violation of the fair credit reporting act under 15 U.S.C. § 1681o against the Department for failing to conduct a proper investigation under 15 U.S.C. § 1681s-2(b), and (II) willful violation of the fair credit reporting act against the Department under § 1681n on the same facts as Count I. Plaintiff brought two identical claims against Equifax which he has now settled; Equifax has been dismissed from this case. (Doc. 20).

The Department now seeks to dismiss the remaining claims by motion under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or 12(b)(6) for failure to state a claim. Because the Court grants the Department's 12(b)(1) motion, it need not address the 12(b)(6) motion to dismiss for failure to state a claim.

## II. STANDARD OF REVIEW

On a 12(b)(1) motion, the plaintiff has the burden of proving jurisdiction. *Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). Motions to dismiss for lack of subject-matter jurisdiction fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In a factual attack, the Court must weigh the "evidence [before it] to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). A facial attack goes to whether the plaintiff

has properly alleged a basis for jurisdiction, and the trial court takes the allegations of the complaint as true. *Id*. The Department here does not contest the facts in the complaint and therefore brings a facial attack. *Ball by Burba v. Kasich*, 244 F. Supp. 3d 662, 672 (S.D. Ohio 2017). In deciding the merits of a facial attack under 12(b)(1), "the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Thus, a facial attack on the pleading under Rule 12(b)(1) mirrors the standard of review on a motion brought under Rule 12(b)(6). *Ball by Burba*, 244 F. Supp. 3d at 672.

### III. ANALYSIS

#### A. FCRA does not waive sovereign immunity

Absent a waiver, sovereign immunity shields the federal government, its agencies, and employees from suit. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (citing *Loeffler v. Frank*, 486 U.S. 549, 554 (1988); *Federal Housing Administration v. Burr*, 309 U.S. 242, 244 (1940)); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction"). "Federal courts are courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996). "To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such

monetary claims." *Id.* "Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Id.*

Where a statute is unclear, courts must "construe ambiguities in favor of immunity." *Id.* The burden of establishing a waiver of sovereign immunity "rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377.

In this case, Plaintiff has not met his burden of establishing that the Fair Credit Reporting Act ("FCRA") waives sovereign immunity against an action for damages under the remedial provisions of §§ 1681n and 1681o.

When FCRA was enacted, it defined "person" to include "government or governmental subdivision or agency." *See* Pub.L. 90-321, Title VI, § 602, Oct. 26, 1970; 15 U.S.C. § 1681a(b). This meant the federal government was subject to the same restrictions on permissible uses of credit reports as any other person. At that time, enforcement provisions were only available to address violations by consumer reporting agencies. *Id.* Thus, at the FCRA's inception, there was no argument that it waived sovereign immunity for monetary damages against the federal government.

In 1996, Congress passed the Consumer Credit Reporting Reform Act. The Act broadened FCRA's enforcement provisions to address violations by "any person" not just consumer reporting agencies. *See* 15 U.S.C. §§ 1681n and 1681o. The definition of "person" in 15 U.S.C. § 1681a(b), however, continued to include the word "government." Courts have long grappled with whether this was merely inartful drafting or leaving

4

"government" in the definition of "person" was Congress unequivocally waiving sovereign immunity for monetary damages against the federal government.[1]

Neither the Supreme Court nor the Sixth Circuit have yet addressed this question. The four circuit courts that have addressed it are evenly split. *Compare Robinson v. U.S. Dep't of Educ.*, 917 F.3d 799 (4th Cir. 2019) (finding Congress has not waived sovereign immunity) *and Daniel v. Nat'l Park Serv.*, 891 F.3d 762 (9th Cir. 2018) (same) *with Bormes v. United States*, 759 F.3d 793 (7th Cir. 2014) (finding it has) *and Mowrer v. United States Dep't of Transportation*, 14 F.4th 723 (D.C. Cir. 2021) (same).[2]

Having reviewed these cases, the statute, its legislative history, relevant Sixth Circuit case law, and the parties' arguments, this Court agrees with the Department (and the Fourth and Ninth Circuits). Congress did not unambiguously and unequivocally waive the federal government's sovereign immunity when it expanded FCRA enforcement "any person" without changing the statute's existing definition of "person."

In arriving at this conclusion, the Court views the FCRA in its entirety. *See Richards v. United States*, 369 U.S. 1, 11 (1962) ("[A] statute should not be read in isolation from the context of the whole Act, and that in fulfilling our responsibility in interpreting legislation, we must not be guided by a single sentence or member of a

---

[1] The legislative history of this amendment also suggests that Congress did not contemplate extending liability to the federal government through the phrase "any person." *See* H.R. REP. 103-486, Sec. 112, 49 (1994) (noting that because of the amendment to extend liability provisions to "any person who" fails to comply, "persons who furnish information to consumer reporting agencies, such as *banks and retailers*, will be liable to consumers for willful and negligent violations of the Act.") (emphasis supplied).

[2] *Mower* was decided after briefing on this motion concluded so it is not addressed in the parties' memoranda.

sentence, but (should) look to the provisions of the whole law, and to its object and policy"). Though courts normally assume that identical words used in different parts of the same act are intended to have the same meaning, "this is merely a general assumption, and is not always valid or applicable." *Greenbaum v. Environ. Prot. Agency*, 370 F.3d 527, 537 (6th Cir. 2004). "[I]n common usage, the term 'person' does not include the sovereign, and statutes employing the word are ordinarily construed to exclude it." *Int'l Primate Prot. League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 82–83 (1991). Indeed, the Supreme Court is "especially reluctant to read 'person' to mean the sovereign where … such a reading is 'decidedly awkward.'" *Id*. at 83.

Often, the "meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000). Thus, "[t]he court must look beyond the language of the statute … when the text is ambiguous or when, although the statute is facially clear, **a literal interpretation would lead to internal inconsistencies, an absurd result, or an interpretation inconsistent with the intent of Congress**." *Vergos v. Gregg's Enterprises, Inc.*, 159 F.3d 989, 990 (6th Cir. 1998); *see also Appleton v. First Nat. Bank of Ohio*, 62 F.3d 791, 801 (6th Cir. 1995) ("Reliance on the literal language of the statute is not justified … if it leads to an … absurd result … even when the language of a statute is clear, 'ambiguity may exist if it appears that the legislature did not consider a particular problem which a court is called upon to resolve.'").

Here, the Court is persuaded that construing "person" in the FCRA's enforcement provisions to include the United States government would create "absurd" and

"implausible" results. For example, treating the United States government as a "person" could subject the federal government to criminal penalties (15 U.S.C. § 1681q) or permit the federal government to be investigated by its own agencies or state governments (*id.* at § 1681s). Permitting criminal prosecution of the federal government is an absurd and implausible result. *See Al-Haramain Islamic Found., Inc. v. Obama*, 705 F.3d 845, 854 (9th Cir. 2012) (interpreting the word "person" in statute to allow criminal prosecution against federal office would be "patently absurd."); *United States v. Singleton*, 165 F.3d 1297, 1300 (10th Cir. 1999) (argument that interpretation of "whoever" in a statute was intended to subject the United States to criminal prosecution "is patently absurd."); *United States v. Taylor*, 188 F.3d 505, *4 (4th Cir. 1999) (same, citing *Singleton*).

At the very least, interpreting "person" to apply to the United States government generates ambiguity as to whether Congress *intended* to waive sovereign immunity for monetary damages. *See F.A.A. v. Cooper*, 566 U.S. 284, 290 (2012) ("Ambiguity exists if there is a plausible interpretation of the statute that would not authorize money damages against the Government."). Where a statute is ambiguous as to liability for the federal government, the Court is bound to construe it in favor of preserving sovereign immunity. *Lane*, 518 U.S. at 192.

Because interpreting "person" in the enforcement provisions of FCRA to include the United States government leads to, at best, ambiguity, and in other cases absurd results, this Court declines to read it that way. *Int'l Primate*, 500 U.S. at 83; *Vergos*, 159 F.3d at 990. Thus, the text of the FCRA lacks the "clarity of expression necessary to establish a waiver of sovereign immunity against monetary damages." *Lane*, 518 U.S. at

192. The Court holds that Congress has not waived sovereign immunity in §§ 1681n or 1681o.[3]

### B. Circuit court decisions support leaving sovereign immunity intact

The Court's conclusion here is consistent with the decisions of the Fourth Circuit in *Robinson v. U.S. Dep't of Educ.*, 917 F.3d 799 (4th Cir. 2019), *cert. denied sub nom, Robinson v Dep't of Educ.*, 140 S. Ct. 1440 (2020), and the Ninth Circuit in *Daniel v. Nat'l Park Serv.*, 891 F.3d 762 (9th Cir. 2018). Plaintiff asks the Court to instead follow the Seventh Circuit's decision in *Bormes v. United States*, 759 F.3d 793 (7th Cir. 2014).

In 2014, the Seventh Circuit in *Bormes* decided that FCRA *had* waived sovereign immunity. *Bormes v. United States*, 759 F.3d 793, 795 (7th Cir. 2014). The reasoning in *Bormes* was simple: the civil enforcement provisions of FCRA impose liability on "[a]ny person" who willfully or negligently violates FCRA. *Id.* citing 15 U.S.C. §§ 1681n and 1681o. The FCRA defines "person" to include "any . . . government or governmental subdivision or agency." *Id.* citing 15 U.S.C. § 1681a(b). Since "[t]he United States is a government," "[o]ne would suppose that [would be] the end of the inquiry." *Id.* The Court concluded that "[b]y authorizing monetary relief against every kind of government, the United States has waived its sovereign immunity." *Id.* Accordingly, the Seventh Circuit looked to the plain language of FRCA and concluded that the term "government" included the United States.

---

[3] To be sure, this holding does not affect the substantive provisions of the FCRA that expressly apply to the federal government, (*e.g.*, 15 U.S.C. § 1681u)

8

The Court has reviewed the *Bormes* decision and finds its reasoning unpersuasive. In the Court's view, the Seventh Circuit did not account for results of construing the United States government as a "person" under the enforcement provisions, as courts in the Sixth Circuit are bound to do. *Vergos v. Gregg's Enterprises, Inc.*, 159 F.3d 989, 990 (6th Cir. 1998) ("[t]he court must look beyond the language of the statute … when the text is ambiguous or when, although the statute is facially clear, a literal interpretation would lead to internal inconsistencies, an absurd result, or an interpretation inconsistent with the intent of Congress."). Decisions from the Fourth and Ninth Circuits are more aligned with this Court's obligations in the Sixth Circuit.

In 2018, the Ninth Circuit in *Daniel* addressed the issue of sovereign immunity against FCRA liability. The Ninth Circuit began its analysis with the maxim that "our duty is 'to construe statutes, not isolated provisions." *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 769 (9th Cir. 2018) (quoting *King v. Burwell*, 576 U.S. 473, 486 (2015)). The Ninth Circuit held that "[c]onstruing the FCRA as a whole—including the different contexts in which 'person' is used, and the inclusion of a clear waiver of sovereign immunity in an unrelated provision—we view the statute as ambiguous with respect to whether Congress waived [sovereign] immunity." *Id.* at 769. The Court explained that FRCA uses the term "person" in several provisions including one which provides for criminal penalties for certain willful violations of the FCRA. *Id.* at 769–70 (citing 15 U.S.C. § 1681q). "Because authorizing criminal penalties against governments rather than individuals would be" "patently absurd" and "unprecedented," the Court concluded

9

that "it is highly unlikely that Congress intended to do so obliquely with a broad definition of 'person.'" *Id*. at 770.

The Ninth Circuit reasoned that it would be absurd if the Federal Trade Commission, the Consumer Financial Protection Bureau, and state governments were able "to launch enforcement actions against the United States for violations of the FCRA." *Id*. at 770-71 (citing 15 U.S.C. §§ 1681s(a)(2)(A) and 1681s(c)(1)(B)). And the Ninth Circuit analyzed an unrelated provision in FCRA that *does* contain a clear waiver of sovereign immunity. Section 1681u(j) provides that "[a]ny agency or department of the United States obtaining or disclosing any consumer reports, records, or information contained therein in violation of this section is liable to the consumer" for statutory and actual damages, and, "if the violation is found to have been willful or intentional, such punitive damages as a court may allow." *Id.* at 771 (quoting 15 U.S.C. § 1681u(j)). The Ninth Circuit reasoned that "'[t]he fact that Congress explicitly named the United States in the remedial provisions found at § 1681u(j) but not in the remedial provisions found at §§ 1681n and 1681o demonstrates the equivocal nature of any purported waiver of sovereign immunity' in the latter sections." *Id.* at 771 ("[T]he comparison to § 1681u [i]s particularly instructive because it is useful to benchmark the statutory language against other explicit waivers of sovereign immunity when determining whether an unequivocal waiver of sovereign immunity exists."). The Ninth Circuit also compared the express waivers of sovereign immunity in other federal statutes with the language of FCRA and observed that most statutes expressly use the term "United States" when waiving

10

sovereign immunity whereas the definition of "person" in § 1681a(b) does not. *Id*. at 772–73.

In 2019, the Fourth Circuit reviewed both *Daniel* and *Bormes* and interpreted FCRA similarly to the Ninth Circuit. *Robinson v. United States Dep't of Educ.*, 917 F.3d 799, 801 (4th Cir. 2019), *cert. denied sub nom. Robinson v. Dep't of Educ.*, 140 S. Ct. 1440 (2020). As in this case, the plaintiff in *Robinson* sought damages under 15 U.S.C. §§ 1681n and 1681o for violation of 15 U.S.C. § 1681s-2(b) when the U.S. Department of Education allegedly failed to complete a reasonable investigation of the plaintiff's dispute of a student loan. *Id.* at 800. The Court canvassed possible results from including the United States in the definition of "any person" as used in the enforcement sections of FCRA, such as permitting criminal prosecution against the government. The Fourth Circuit found that FCRA "bears no indicia of congressional intent to bring about such a bevy of implausible results, let alone an unambiguous and unequivocal intent to do so." *Id*. at 805. In holding that the FCRA did not unequivocally waive sovereign immunity, the Court also reasoned that: (i) the term "person" in a statute is generally not construed to include the United States; (ii) statutes waiving sovereign immunity, such as the Little Tucker Act and the Federal Tort Claims Act, do so by specifically using the term "United States;" and (iii) an unrelated provision, 15 U.S.C. § 1681u(j), *does* provide for an express waiver of sovereign immunity by stating, where the United States violates that section, "the United States . . . is liable to the consumer." The "stark contrast[] between this section and FCRA's other civil liability provisions [15 U.S.C. §§ 1681n, and

11

1681o] . . . serve[s] as strong evidence that Congress did not waive sovereign immunity under FCRA." *Robinson*, 917 F.3d 802-804.

Most recently, in 2021, the D.C. Circuit reviewed *Bormes*, *Daniel*, and *Robinson*. The D.C. Circuit disagreed with the Fourth and Ninth Circuits. Like *Bormes*, the decision followed the simple textual logic of the statute. The court noted that both § 1681n and § 1681o referred to "any person" and, under the statute, the term "person" meant, among other things, "government or governmental subdivision or agency, or other entity." *Id*. § 1681a(a)–(b). *Mowrer*, 14 F.4th at 728. The court reasoned that together, "these provisions speak clearly enough to waive federal sovereign immunity." *Mowrer*, 14 F.4th at 729.

Unlike the Seventh Circuit, however, the D.C. Circuit had a chance to address *Daniel* and *Robinson*. Among other arguments, the court addressed its sister circuits' concerns that construing "person" to include the federal government would unconstitutionally impose liability on state governments. *Id.* at 729. Accepting that this result would be unconstitutional, the D.C. Circuit stated "even if FCRA unconstitutionally imposes damages liability on state governments, there is no constitutional bar to Congress waiving the sovereign immunity of the *federal* government. *Id.* But this Court cannot so blithely accept an interpretation that *presumes* part of the statute is unconstitutional, especially when an equally plausible interpretation that avoids any unconstitutionality is available. *Crowell v. Benson*, 285 U.S. 22, 62 (1932) ("[I]f a serious doubt of constitutionality is raised, it is a cardinal principle that

12

this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.").

Furthermore, the DC Circuit rejected the possibility that an interpretation of "person" that includes the federal government would therefore subject the federal government to criminal liability. *Mowrer*, 14 F.4th at 730. The court explained, "we may assume that contextual considerations would prevent application of the "person" definition as written. *Id.* at 730. It cited *Util. Air Regul. Grp. v. E.P.A.*, 573 U.S. 302, 320 (2014), for the proposition that a "defined term may take on distinct characters from association with distinct statutory objects." The D.C. Circuit's suggestion is not merely adjusting the "character" of a defined term to match "contextual considerations." Rather, the circuit court proposes swapping definitions entirely to avoid concededly absurd results on the fly. By the D.C. Circuit's reading, the term "person" includes the federal government when it doesn't lead to absurd results, but not when it does. That conclusion is unworkable and, more importantly, concedes the statute's ambiguity. *United States v. Williams*, 514 U.S. 527, 531 (1995) (courts are to "constru[e] ambiguities in favor of immunity.")

Finally, the D.C. Circuit paid lip service to the legislative history of the FCRA. It recognized that the original statute probably did not intend federal government liability, and that including "government" in the definition of "person" predated the 1996 amendment's expansion of liability to "any person." *Id.* at 730. In the end, however, the D.C. Circuit stuck to the textualist position that it "is the text that we must construe and

13

apply here." *Id.* This Court ascribes more weight to FCRA's legislative history, and concludes that Congress did not intended to waive sovereign immunity.

The Court agrees with the Fourth and Ninth Circuits that Congress has not unambiguously and unequivocally waived the federal government's sovereign immunity against suits under FCRA, 15 U.S.C. §§ 1681n and1681o. The Court is therefore without subject matter jurisdiction to adjudicate Plaintiff's remaining claims against the Department.

## IV. CONCLUSION

Based upon the foregoing, the Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 15) is **GRANTED.** Plaintiff's remaining claims are **DISMISSED.** The Clerk shall enter judgment accordingly, and this case is **TERMINATED** from the docket of this Court.

**IT IS SO ORDERED.**

Date: 3/31/2022

*s/Timothy S. Black*
Timothy S. Black
United States District Judge